WILL OF WEHNER: DEAN, Guardian *ad litem,* Appellant, vs. FIRST WISCONSIN TRUST COMPANY, Respondent.

*September 12—October 7, 1941.*

For the appellant there was a brief by *Timlin, Dean & Klug* of Milwaukee, and oral argument by *Patrick W. Dean.*

For the respondent there was a brief by *Shea & Hoyt,* attorneys, and *Ralph M. Hoyt* of counsel, all of Milwaukee, and oral argument by *Mr. Hoyt:*

MARTIN, J. The guardian *ad litem* contends:

(1) That the bonds were purchased on a discount basis and any increment in value belongs to corpus;

(2) That the increment on the bonds is not income for trust purposes;

(3) That if increment on the bonds is income it is not distributable income until it comes into the possession of the trustee, either when the bonds are redeemed or mature;

(4) That distributable income belongs to the person who is the income beneficiary when such income is received by the trustee;

(5) That the county court has no power by order to authorize the trustee to distribute that which has not come into its possession.

The principal contention of the guardian *ad litem* is that the bond in question was purchased on a discount basis; that under the law any appreciation of the bond is principal and becomes a part of the corpus of the estate, citing Restatement, Trusts, § 240, comment *h;* 2 Scott, Trusts, § 240.2.

It is considered that the increase in the redemption price is not an appreciation in the value of the bond in the sense that an ordinary bond bought at a discount appreciates as the sale price thereof approaches par, and for the following reason: While the bond has at its maturity a value of $1,400, and that is spoken of as the face of the bond, a consideration of the facts leads us to the conclusion that that is not an

exact statement of what occurs. No matter what the instrument may be called, there is an investment by the purchaser of the sum of $1,050. The United States government agrees to pay at the end of a ten-year period, the sum of $1,400. It further agrees that it will redeem the said bond at the end of any six-month period up to maturity at the price stated in the table. This increase in the redemption price is what the investor receives for the use of $1,050, and for the deferment of the payment until such time as the bond matures or is presented for redemption.

Computed upon the principal and so compounded semi-annually, this returns to the investor, if he holds the bond for the whole period, an income amounting to 2.9 per cent. That this is income seems too plain to us for argument. The sum paid on any redemption date is the principal sum of $1,050, plus the deferred interest. It is considered that the trial court correctly held that the increase over the purchase price represents income which accrues at the end of every six-month period, and the same belongs to the person who is entitled to receive the income.

The question then arises, how may this income be made available to the life tenant? In this case the trustee had funds belonging to the corpus on hand. The trustee proposed to invest these funds and to purchase from the life tenant the interest due the life tenant. The fund thus expended would be restored to the corpus whenever the bonds were matured or were redeemed. This is the procedure which the trial court authorized by its order and judgment. We see no possible objection to this procedure.

Here is a security admittedly as good as any which would be purchased in the market and bearing a higher rate of interest than any other security equally as good. If the contention of the guardian *ad litem* should be sustained, and the income could not be anticipated in this matter, then in order to make the income available the trustee would be

obliged to surrender the bond in order to procure the income and could thus never derive the full benefit of the increasing redemption price. On the other hand, by investing the corpus in the interest earned but not payable, which belongs to the life tenant, the funds belonging to the corpus are placed in an absolutely safe investment and the income is made available to the life tenant.

While it is true that we have never been faced with a situation similar to this, we see no reason why the county court should not adapt its procedure to a change in the form of security instituted by the federal government, and thus make available the safest possible investment of trust funds. These bonds are not such as rise and fall in the market. The speculative element is entirely removed. They are redeemed by the payment of United States legal tender. The trustee is under no duty to distribute funds in any higher form of exchange.

This plan makes the United States savings bonds a practical and workable form of investment for trust funds in a manner which assures the life tenant a steady flow of income while at the same time keeping the funds of the remainderman safely invested in a security of the highest type available in any market.

*By the Court.*—Order and judgment affirmed.